hBYRNES, Judge.
Plaintiffs, Lisa Felix wife of/and Eldon L. Ellsworth, sued the defendant, Sheila High-tower West, on a promissory note. The trial court maintained the defendant’s exception of prescription. We reverse and remand for further proceedings.
I. The first payment on the note was not due until December 31, 1989.
The defendant, Ms. West, was the maker of a promissory note payable to bearer dated August 31, 1987. It was paraphed “Ne Var-ietur” for identification with an Act of Sale and Assumption of even date. Plaintiffs as holders of the note filed this suit on the note against Ms. West on December 29, 1994. It is undisputed that no payments had been made on the note at the time suit was filed. Plaintiffs make no attempt as part of these proceedings to enforce the real property vendor’s lien seeming the note which was embodied in the Act of Sale and Assumption executed in connection with the note.
The note provides in pertinent part:
FOR VALUE RECEIVED, I promise to pay to the order of BEARER Twenty Two Thousand Nine Hundred Twenty and %o ($22920.86) Dollars with interest |2from date until paid at the rate of Nine Per Cent (9%) per annum. The payments on principal and interest are deferred for twenty seven (27) months or until December 31, 1989 at which time the sum of *404 Twenty Seven Thousand Five Hundred Sixty Two and 31/ioo ($27,562.31) Dollars shall be due and the monthly payments of Two Hundred Twenty One and ⅜ ($221.27) Dollars shall start and continue until September 31, 1992 at which time the sum of Twenty Seven Thousand Eighty Two and ⅝ (@27,082.07) Dollars shall be due and payable. [Emphasis added.]
Ms. West argues that prescription began to run 27 months after the date of the note according to the language highlighted above, and that the five year prescriptive period had run on November 30, 1994 prior to the fifing of this suit by the plaintiff. Additionally, Ms. West argues that the December 31, 1989 date is inconsistent with the 27 month time period creating an ambiguity that should be construed in her favor and against the defendants who were the authors of the note and the Act of Sale and Assumption.
Both parties argue rules for interpreting documents, but such rules are nothing more than procedures for divining the intent of the parties when it is not immediately apparent from the language of the instrument. Where the language is clear, there is no reason to resort to rules for sorting out ambiguities. LSA-C.C. art. 2046. Language does not have to be simple or easy to be free of ambiguities. Such is the case here where this court finds that the note is free from ambiguities and the intention of the parties may be determined without resort to artificial rules of construction.
Twenty-seven months from August 31, 1987 is November 30, 1989. If interest on the note amount of $22,920.86 is calculated monthly at the rate of 9% per annum (which equates to a monthly simple interest factor of .0075) for twenty-¡seven3 months through November 30, 1989 the accumulated interest added to the original note amount of $22,-920.86 comes to $27,562.31 on November 30, 1989, which coincides with the amount called for in the note. The first month’s interest and principal payment on this augmented balance of $27,562.31 would not be due until December 31, 1989 which is consistent with the date in the note. Thus this Court finds no conflict between the language calling for an accrual of interest for 27 months, i.e., through November 30,1989 and the language calling for payments to begin on December 31,1989. The twenty-seven months (November 30, 1989) refers to the date for adding the accumulated interest to the original principal balance, but the December 31, 1989 date refers to the time when the first payment is due on the new augmented balance.
Plaintiffs argue that the Act of Sale and Assumption was never properly introduced into evidence and that Ms. West should not be allowed to use language from that Act to support her argument that the language in the note is ambiguous and should be construed in her favor. A review of the transcript of the hearing on the exception of prescription shows that the only document formally offered into evidence was the note. Cf. Gulf Coast Bank and Trust Co. v. Eckert, 95-156 (La.App. 5 Cir.5/30/95), 656 So.2d 1081, writ den. 95-1632 (La. 10/6/95), 661 So.2d 474.
Regardless of its admissibility, the Act of Sale and Assumption creates no material ambiguity when read with the note. We find nothing in the Act of Sale and Assumption that would change this Court’s view of when the first payment was due and prescription commenced to run. The Act of Sale and Assumption provides:
| ¿Purchaser agrees to pay $22,920.86 at an interest rate of 9% per annum payment deferred for 27 months or until November, 1989 at which time the sum due shall be $27,561.47[1] and monthly payments of principal and interest in the amount of $221.77 shall start and continue until September, 1992 at which time the balance of $27,-082.07 shall be due and payable.
Although this language from the Act does not specifically state that the first payment will be due on December 31,1989, that is the necessary effect of the language, because that would be the date on which the first month’s interest would be due on the new *405 augmented balance of $27,561.47. It takes the interest for November which is not due until November 30, 1989 to bring the principal balance up to that amount. The first month’s interest is not due on the new augmented amount until one month later, i.e., December 31,1989. It would be inconsistent to interpret the documents to require a month’s interest on November 30 on the new balance while simultaneously collecting the month’s interest on the original balance necessary to bring it to the new balance. Simply put, to read the documents as Ms. West contends they should be read would result in two months’ payments being due in November which is inconsistent, whereas if the documents are read as plaintiffs contend, we give effect to all dates in the documents, no inconsistency arises, and payments become due one month at a time, consistent with all other months. As the clear wording of the documents support plaintiffs position and leads to no absurd consequences or inconsistencies, no further interpretation is warranted in search of the intent of the parties. LSA-C.C. art. 2046.
IsII. The note was never accelerated.
As the first payment on the note is not due until December 31, 1989, the note cannot be accelerated prior to that date and prescription cannot not begin to run prior to that date.[2] The note provides that upon default it may be accelerated “at the option of the holder.” There is no ipso facto clause in the note providing for its automatic acceleration in the event of default, so that is not an issue. Acceleration could not have occurred prior to May 27, 1994 when plaintiff sent a letter demanding payment in full. The defendant argues that that demand letter constituted an acceleration and that that acceleration had a retroactive effect back to the date the note was executed. From this the defendant argues that prescription began to run on the entire note commencing on August 31, 1987. But acceleration has no retroactive effect on prescription or past due payments. It only affects payments that otherwise would not be due until some future date, including the | ^principal balance in the case of a balloon note such as the one at issue in the instant case. After a series of installment payments commencing on December 31, 1989, according to the explicit terms of the note the entire balance on the note became due and payable in one balloon payment on September 31, 1992 long before the 1994 demand letter was sent. Therefore, at the time the 1994 demand letter was sent there was nothing to accelerate as the entire balance was already due.
This was an installment note. The first payment on the note was not due until December 31, 1989. Prescription does not begin to run until the first payment is due, and then only on each payment as it became due whether according to the normal payment schedule, or upon acceleration which did not occur in this case. Therefore, even had we concluded that prescription began to run on November 30,1989 instead of December 31, 1989, only the first installment would have prescribed at the time plaintiffs filed this suit on December 29,1994.
Therefore, the filing of this suit on December 29, 1994 was timely regardless of wheth *406 er a five year prescriptive period is applied pursuant to LSA-C.C. art. 3498 as urged by the defendant, or a six year period is applied as urged by the plaintiffs pursuant to LSA-R.S. 10:3-118.
For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

. We recognize that this figure is 16 cents more than the figure shown in the note. We consider this discrepancy to be immaterial and of no legal significance.

. The note provides that upon default it may be accelerated “at the option of the holder.” There is no ipso facto clause in the note providing for its automatic acceleration in the event of default, so that its not an issue. Acceleration could not have occurred prior to May 27, 1994 when plaintiff sent a letter demanding payment in full. Acceleration has no retroactive effect on prescription or past due payments. It only affects payments that otherwise would not be due until some future date, including the principal balance in the case of a balloon note such as the one at issue in the instant case. After a series of installment payments commencing on December 31, 1989, according to the explicit terms of the note the entire balance on the note became due and payable in one balloon payment on September 31, 1992 long before the 1994 demand letter was sent. Therefore, at the time the 1994 demand letter was sent there was nothing to accelerate as the entire balance was already due.
This was an installment note. The first payment on the note was not due until December 31, 1989. Prescription does not begin to run until the first payment is due, and then only on each payment as it became due whether according to the normal payment schedule, or upon acceleration which did not occur in this case. Therefore, even had we concluded that prescription began to run on November 30, 1989 instead of December 31, 1989, only the first installment would have prescribed at the time plaintiffs filed this suit on December 29, 1994.